NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
JONATHAN C. HSIEH (SBN 281700)
jhsieh@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California  94010
Telephone:     (650) 697-6000
Facsimile:     (650) 692-3606

ELIZABETH S. LETCHER (SBN 172986)
eletcher@heraca.org
**HOUSING AND ECONOMIC RIGHTS
ADVOCATES**
1814 Franklin Street, Suite 1040
Oakland, California  94612
Telephone:     (510) 271-8443
Facsimile:     (510) 868-4521

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **JOY CHIN** and **JACK CHIN**, | Case No. C 13-02704 EDL |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT** |
| **BANK OF AMERICA, N.A.**, for itself, and as successor by merger to **BAC HOME LOANS SERVICING, L.P.**; **NATIONSTAR MORTGAGE LLC,** for itself, and **U.S. BANK, N.A.**, as Trustee for the Certificateholders of Banc of America Funding Corporation Mortgage Pass-Through Certificates Series 2007-D, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## I.  **INTRODUCTION**

1.      In June of 2011, Joy and Jack Chin signed the Deed in Lieu of Foreclosure agreement that their mortgage servicer Bank of America had sent them, mailed the agreement and the keys to their home in San Ramon to Bank of America, and moved their two children into a one bedroom hotel room.  In doing so, the Chins fulfilled the final conditions of their Deed in Lieu of Foreclosure contract with Bank of America, which traded their interest in their home for the ability to walk away without further financial obligations.

2.      Prior to accepting that contract, Jack and Joy Chin had made their home and raised their children at 1820 Barossa Drive in San Ramon for nearly a decade.  Shortly after they purchased the home in 2002, both of their children were diagnosed with autism, burdening the Chins with tremendous and unforeseen new medical and education costs.  Although the Chins remained faithful to their financial obligations as long as possible, they eventually were unable to make their mortgage payments.

3.      Beginning in late 2008, the Chins contacted Bank of America and tried to work with their lender in order to meet their obligations and keep their home.  They obtained a four-month loan forbearance in December 2008, and over the next 18 months applied several times for a loan modification.  Their efforts were fruitless, as Bank of America repeatedly strung them along, asking for documents the Chins had already submitted.  Eventually, Bank of America denied their application for a home loan modification.

4.      Finally, in May of 2011, Bank of America offered the Chins a Deed in Lieu of Foreclosure contract.  The Chins carefully followed each of the instructions and conditions that accompanied the contract, including moving out of their home.

5.      Although the Chins thought they had washed their hands of the property by moving their family of four out and giving their home to the bank, Bank of America apparently had no intention of abiding by the Deed in Lieu contract.  Well over a month after they had moved, they got an escrow statement from Bank of America demanding that they pay a $26,000 "escrow shortage."  The Chins wrote Bank of America, thinking it was a mistake.  But in October

1    2011, Bank of America began repeatedly calling the Chins at work and on their cell phones about

2    the mortgage on the Barossa Drive property

3        6.      Bank of America finally wrote the Chins, over half a year after they had moved

4    out, that their "request" for a Deed in Lieu had been "denied."  In February 2012, Bank of

5    America notified the Chins that the new monthly payment for their home loan – which the Chins

6    had not lived in for approximately 8 months – was nearly $9,000 a month, and included charges

7    for lender-placed homeowner's insurance Bank of America had purchased in August, 2011 that

8    cost *over $10,000* per year.

9        7.      Over the next year, Bank of America repeatedly contacted the Chins, trying to

10   collect payments, offering the Chins a chance to apply again for a Deed in Lieu or a loan

11   modification, and threatening foreclosure and other debt collection penalties.  They also sent

12   monthly statements to the Chins showing ever-increasing past due amounts totaling up to

13   $250,000.

14       8.      Bank of America's refusal to abide by the terms of the contract it offered to the

15   Chins, and its unlawful attempts to collect payment for the mortgage, have taken an incredible toll

16   on the Chins.  This entire ordeal has caused extreme anxiety and profound emotional distress for

17   the Chins, and has demonstrably and irrevocably disrupted their lives.  This lawsuit seeks to hold

18   Bank of America responsible for its negligence, misrepresentations, breach of contract, and illegal

19   debt collection practices, and for the suffering it has inflicted on the Chins.   The suit also seeks

20   relief against Nationstar, the new mortgage servicer to whom servicing of the loan has been

21   transferred.

22   **II.      JURISDICTION AND VENUE**

23       9.      Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, as the

24   matter is between citizens of different states and the amount in controversy exceeds $75,000.

25   Plaintiffs are citizens of the State of California.  Bank of America, N.A. is a North Carolina

26   corporation headquartered at 101 Tryon Street, Charlotte, North Carolina 28255.  U.S. Bank N.A.

27   is a nationally chartered bank located in Cincinnati, Ohio.

28

10.     Venue is appropriate in the Northern District of California pursuant to 28 U.S.C. §1391(b) because the property that is the subject of this action is located within the district, and because a substantial part of the events or omissions giving rise to the claim occurred in the North District of California.

11.     Defendants conduct business in the Northern District of California.

## III.    THE PARTIES

### A.      Plaintiffs

12.     JACK CHIN and JOY CHIN ("Plaintiffs" or "the Chins") were, from 2002 until 2011, residents of Contra Costa County.  Plaintiffs were the rightful sole owners of residential real property situated in San Ramon, California, known as 1820 Barossa Drive ("the Home").

### B.      Defendants

13.     Defendant Bank of America, N.A. ("Bank of America") is a mortgage lender and servicer with headquarters at 101 Tryon Street, Charlotte, North Carolina  28255.  Effective July 1, 2011, BAC Home Loans Servicing, L.P. merged with and into Bank of America, N.A.  Bank of America was the servicer of the loan at issue and the agent of U.S. Bank, N.A.  Each of acts and omissions undertaken by Bank of America throughout the relevant time period described herein were undertaken on behalf of U.S. Bank, N.A., as Trustee for the Certificateholders of Banc of America Funding Corporation Mortgage Pass-Through Certificates Series 2007-D.

14.     Defendant Nationstar Mortgage LLC ("Nationstar") is a national mortgage servicing company with its principal place of business in Lewisville, Texas.  Nationstar became the servicer for the Chin's mortgage on November 1, 2013.  As servicer of the Chins' loan, Nationstar is an agent of defendant U.S. Bank, N.A., a necessary party that is, at this juncture, joined for the purpose of ensuring that the Chins' interests are adequately protected.

15.     Defendant U.S. Bank, N.A., is a nationally chartered bank with its principal place of business in Cincinnati, Ohio.  U.S. Bank, N.A., as Trustee for the Certificateholders of Banc of America Funding Corporation Mortgage Pass-Through Certificates Series 2007-D, is the investor of the relevant mortgage.

### C.     **Agency**

16.     Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned each of the Defendants was an agent, servant, employee, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts.

### D.     **Aiding and Abetting/Conspiracy**

17.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

### E.     **Alter Ego**

18.     There is a unity of interest between Defendants, and each acts as the alter ego of the other.

## IV.     **FACTUAL ALLEGATIONS**

19.     The Chins purchased their home at 1820 Barossa Drive in 2002.  Shortly after their purchase, the Chins' two children were diagnosed with autism.  As a result, the Chins faced tremendous expenses associated with the diagnosis, including additional medical expenses, education expenses, and other necessary related costs, and  were forced to refinance their home to help pay for these expenses.  They entered into both a refinanced first mortgage of $690,000, the mortgage at issue in this suit, and a Home Equity line of Credit of $60,000.  Joy Chin was forced to devote significant time to her children's education and treatment, and was unable to find work that did not conflict with these new responsibilities.

20.    By 2008, they had fallen further and further into debt, and realized they would not be able to meet their financial obligations.  They contacted their mortgage servicer, Defendant Bank of America, and requested assistance.  Initially, Bank of America put them into a four-month forbearance, but at the end of the four month term, Bank of America required payment of arrears they had accumulated.

21.    The Chins also sought a loan modification from Bank of America beginning in mid-2009.  Despite their pending application, Bank of America recorded a Notice of Default in November, 2009, and a Notice of Trustee's Sale at the end of January, 2010.  The Chins had still received no response to their multiple modification applications.  They hired an attorney to help them to no avail.  They then sought a specialized modification through an organization which facilitates the arrangement of non-industry standard modifications (Neighborhood Assistance Corporation of America), but were ultimately denied.

22.    In May of 2011, Bank of America sent the Chins a letter stating that they had been approved for a Deed in Lieu of Foreclosure and setting out the terms of the agreement.  True and correct copies of the Agreements that set out the terms of the contract are attached hereto as Exhibit A.  The agreement required the Chins to sign and notarize a Grant Deed in Lieu of Foreclosure, which would convey title to BAC Home Loan Servicing, LP, and additional forms, and to completely vacate the property in less than a month by June 13, 2011.  In addition, the title to the property had to be clear, and the property itself had to be in good condition.  The Agreement specified limited conditions under which Bank of America would cancel the Deed in Lieu – if the Chins acted in bad faith or fraudulently, if they filed for bankruptcy, if the property condition changed, if litigation that could affect title to the property was initiated, or if the Chins did not timely return the contract documents.  By letter dated June 1, 2011, Bank of America, in its capacity as the lienholder on the home equity line of credit, agreed to release the second lien as part of the Deed in Lieu.  If the Chins returned the signed agreements and moved out, Bank of America would record a lien release in full satisfaction of the mortgage, and waive any right to pursue a deficiency judgment.

---

**FIRST AMENDED COMPLAINT;** Case No. C 13-02704 EDL                                    5

23.     Exhausted and demoralized by their marathon efforts to save their home, and ready to start afresh, the Chins decided to accept the offer.

24.     The Chins met every condition of the Deed in Lieu Agreement.  The title to the property at 1820 Barossa was clear, and the property itself was in excellent condition.  On June 6, 2011, the Chins signed the Grant Deed in Lieu of Foreclosure contract and other related documents in front of a notary and returned them to Bank of America.  These documents included a request to cancel their homeowners' insurance and pay the premium refund to Bank of America and several agreements to move out by June 13, 2011[1] or face eviction proceedings.  The Chins noted that as of June 6, 2011, they still did not know where they were moving, and so could not provide a forwarding address.

25.     On June 13, 2011, the Chins moved out of their home, into a one bedroom hotel room.  They sent the keys to the home to Bank of America via certified mail.

26.     In moving, the Chins incurred approximately $10,000 in moving expenses.

27.     After relinquishing their home, the Chins believed that the Deed in Lieu of Foreclosure was fully executed, as they had dutifully complied with each of its terms and conditions.  Indeed, Bank of America rescinded the Notice of Default, and reported the Deed in Lieu to all three credit reporting agencies in or around August, 2011.

28.     Thus, the Chins were understandably shocked when they received a notice from Bank of America in August of 2011 that they owed over $26,000 in unpaid property taxes (particularly since Bank of America had been paying their property taxes while they were in default).  The Chins immediately informed their most recent contacts at Bank of America, Patricia Pritchett and Kyle Russum, explaining that any charges relating to the property had been resolved by the Deed in Lieu agreement.  But in October of 2011, Bank of America employee David Rubenstein began repeatedly calling Jack Chin at work, insisting that the Chins had to sign documents to receive a Deed in Lieu.  Jack Chin informed Mr. Rubenstein that the Deed in Lieu

---

[1]  The Chins asked for, and received, a three day extension on vacating the property from Bank of America, which they abided by.  They spoke with Bank of America employee Kyle Russum.

1   contract had already been signed and completed.  The next month, Mr. Rubenstein called Joy

2   Chin, telling her that the Deed in Lieu contract did not go through and was cancelled.  After their

3   ordeal, the Chins wanted nothing more to do with Bank of America, and insisted that they had

4   fulfilled whatever responsibility they had by signing the contracts, moving out, and turning over

5   the house.

6          29.     In or around January of 2012 – over six months after the Chins relinquished their

7   home – Bank of America sent the Chins letter a letter stating that their "request" for a Deed in

8   Lieu was "denied."  It further stated that Bank of America needed more information, that the

9   Chins had not returned the necessary documents, and that the title to the property was not clear.

10         30.     In or around February, 2012, Bank of America sent the Chins an escrow analysis

11   for the property at 1820 Barossa Drive.  It stated that the escrow had a shortage of over $35,000,

12   including a $10,000 per year premium for force placed insurance imposed by the lender, and

13   instituted a monthly payment of nearly $9,000 per month, beginning in April of 2012.  A

14   statement sent to the Chins showed they were over $60,000 in arrears.

15         31.     Meanwhile, Mr. Rubenstein, and his supervisor Rick Fox, continued to contact the

16   Chins about the 1820 Barossa Drive property.  They continued to insist that the Chins owned the

17   property, and that the Deed in Lieu was never completed.  They offered the Chins a variety of

18   "options," including loan modification, short sale, or yet another Deed in Lieu of Foreclosure.

19   They even offered to return the house keys to the Chins.  The Chins, at this point understandably

20   mistrustful of Bank of America, considered accepting, but ultimately declined.

21         32.     On or around March 19, 2012, Bank of America sent the Chins a Home Loan

22   Payment Change Notice.  This Notice presented the Chins with a new monthly payment of over

23   $7,000.  Over the next year, Bank of America continued to send the Chins monthly statements

24   showing past due amounts approaching $250,000, and an ever-increasing escrow shortage.  Bank

25   of America also employed other debt collection practices, such as sending the Chins notices that

26   the loan was being accelerated and referred to foreclosure, and other debt collection letters.

27

28

**FIRST AMENDED COMPLAINT;** Case No. C 13-02704 EDL                           7

33.     The Chins relinquished their home pursuant to the Deed in Lieu of Foreclosure contract nearly two years ago.  Despite this, Bank of America has tirelessly attempted to collect amounts from the Chins which they do not owe.  Recently, Bank of America returned the keys to the 1820 Barossa Drive property to the Chins.  Uncertain of what to do, the Chins moved back into their home.

34.     This action was filed on June 12, 2013.  The parties agreed to stay the litigation for three months, to October 23, 2013, to explore informal resolution of the matter.  On October 19, 2013, Defendant Bank of America informed the Chins that the servicing of their mortgage would be transferred to Nationstar Mortgage LLC, effective November 1, 2013.  As servicer of the loan, Nationstar is collecting on the unpaid balance and alleged arrears Bank of America sought to collect, including unwarranted interest, insurance charges, and default fees.   Unless restrained from doing so, Nationstar may attempt to proceed with foreclosure.

35.     This entire ordeal has caused extreme anxiety and profound emotional distress for the Chins, and has demonstrably and irrevocably disrupted their lives.  Bank of America's refusal inability to fulfill the terms of the Deed in Lieu of Foreclosure contract has forced the Chins to endure both the burdens of that contract and Bank of America's unabated and unlawful attempts to collect, now including the added burdens and stress of dealing with a new mortgage servicer.

## V.     TOLLING OF STATUTES OF LIMITATION BY FRAUDULENT CONCEALMENT

31.     Any applicable statutes of limitation have been tolled by Defendants' continuing, knowing and active concealment of the facts alleged herein.  By virtue of Defendants' concealment and misrepresentations to the Chins, the Chins could not and did not discover Defendants' fraudulent actions.

32.     In the alternative, Defendants should be estopped from relying on any statutes of limitation.  Defendants owed the Chins an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.  Finally, Defendants' conduct is not barred by

1   any statutes of limitation because Defendants' conduct constitutes an ongoing violation of

2   Plaintiffs' rights, which continues to the present.

3   **VI.    CAUSES OF ACTION**

4   **FIRST CAUSE OF ACTION**

5   **BREACH OF CONTRACT**

6   **(Against Defendants Bank of America, N.A. and U.S. Bank)**

7       36.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth

8   in detail.

9       37.    The Deed in Lieu of Foreclosure Agreement described above and attached hereto

10  as Exhibit A is a valid and enforceable contract under California law:

11          a.    Bank of America made an offer to the Chins when it provided the Deed in

12               Lieu contract;

13          b.    The Chins accepted that offer when they signed and returned the agreement

14               and by performance in vacating the 1820 Barossa Drive property;

15          c.    The agreement is supported by consideration in that it provides a benefit to

16               Bank of America when the Chins relinquished their interest in the 1820

17               Barossa property in exchange for a release in full satisfaction of the

18               mortgage.

19      38.    In addition, the Deed in Lieu's express language makes it clear that it is a contract.

20  It states, among other things, that "FOR VALUBLE CONSIDERATION, receipt and sufficiency

21  of which is hereby acknowledged…"  Exhibit B to the Deed in Lieu further states "THE

22  AFORESAID DEED IS INTENDED TO BE AND IS AN ABSOLUTE CONVEYANCE OF

23  THE TITLE…" and that "CONSIDERATION FOR SAID DEED WAS … THE FULL

24  CANCELLATION OF ALL DEBTS, OBLIGATIONS, COSTS AND CHARGES SECURED

25  BY THAT CERTAIN DEED OF TRUST HERETOFORE EXISTING ON SAID

26  PROPERTY…"

27

28

39. The Chins fulfilled every condition specified in the Agreement. Alternatively, Bank of America waived each condition or is estopped from asserting it because it accepted the Chins' performance, including their moving out of their home by the designated date and turning over possession of the property.

40. By failing to implement and honor the terms of the Agreement, Defendants Bank of America and U.S. Bank breached the Agreement.

41. Defendants Bank of America and U.S. Bank breached the Agreement by attempting to collect amounts that were not due and owning under the Agreement, including past due amounts, interest, late fees, and other default-related fees.

42. Defendants Bank of America and U.S. Bank breached the Agreement by converting the terms of the Chins' Agreement back to the terms of the original Note and Security Instrument in effect prior to the execution of the Deed in Lieu of Foreclosure contract.

43. Plaintiffs have suffered harm and are threatened with additional harm resulting from Defendants' breaches. Defendants Bank of America and U.S. Bank have imposed and assessed improper default-related fees and costs, past due payments, escrow charges, and other amounts that remain pending on the Chins' loan accounts.

44. Plaintiffs have been damaged by Defendant Bank of America's inaccurate credit reporting, which has negatively affected Plaintiffs' credit scores, preventing them from being able to obtain credit.

45. Plaintiffs have been damaged because they have had to incur out-of-pocket costs, moving expenses, rent and other lodging expenses, and time off work in attempts to resolve these issues with Defendants Bank of America and U.S. Bank.

/ / /

**FIRST AMENDED COMPLAINT;** Case No. C 13-02704 EDL                    10

**SECOND CAUSE OF ACTION**

**FALSE OR MISLEADING REPRESENTATIONS**

**IN THE COLLECTION OF A DEBT**

**Rosenthal Fair Debt Collection Practices Act**

**California Civil Code §§ 1788 *et seq.***

**(Against Defendant Bank of America, N.A.)**

46.     Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail.

47.     By the conduct described above, Defendant Bank of America has attempted to collect debt that the Chins do not owe.  Through its conduct, Defendant Bank of America deprived the Chins of possession of their home from June 13, 2011 to May, 2013.  Defendant Bank of America cannot rightfully charge the Chins interest, default fees, late fees, force placed insurance fees, or any other charges for that period of time.  Every demand for payment of such interest and fees was an attempt to collect debt that the Chins do not owe.

48.     Defendant Bank of America and its agents and employees used false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of Cal. Civ. Code section 1788.17.

49.     Defendant Bank of America and its agents and employees further used unfair and unconscionable means to collect or attempt to collect a debt in violation of Cal. Civ. Code section 1788.17.

50.     Defendant Bank of America's practices were unlawful, false, deceptive, misleading, unfair, and unconscionable for the reasons set forth below, without limitation:

        a.     Defendant Bank of America falsely represented or implied the character, amount, and legal status of a debt;

        b.     Defendant Bank of America represented or implied that nonpayment of a debt would result in the unlawful seizure, attachment, or sale of a property; and,

c.    Defendant Bank of America threatened to take action that could not legally be taken.

51.    As a result of the wrongful conduct of Defendant Bank of America, Plaintiffs have suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof at time of trial.

52.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### NEGLIGENCE

### (Against Defendant Bank of America, N.A.)

53.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail.

54.    Defendant Bank of America was at all times under a duty to perform their work with due care in and without negligence, and to act in such a manner as a reasonably prudent person would act under similar circumstances.  This duty arose from Bank of America's ongoing servicing relationship with the Chins, which included not only handling their applications for modification of their mortgage, but engaging in efforts to consummate a Deed in Lieu which would necessarily result in a family four with young children moving from their home on a short timeline.

55.    Defendant Bank of America had an obligation to review the Chins' Deed in Lieu of Foreclosure in good faith, and to conform to standards of conduct in the industry to protect them against further losses associated with the loan.  It was foreseeable that a failure to do so would damage the Chins when they tendered their performance under the contract, and would damage the Chins' credit rating.

56.    In performing the acts and omissions outlined above, Defendant Bank of America breached its duty of care to Plaintiffs.  Among other things, and without limiting the generality of the foregoing, Defendant Bank of America:

a.  Failed to use ordinary care in performing the transactions described herein;

b.  Failed to competently monitor and supervise their agents and employees; and/or

c.  Failed to meet the industry standard of care in performing the transactions described herein.

57.  As a result of the wrongful conduct of Defendant Bank of America, and each of them, Plaintiffs have suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof at time of trial.

58.  WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against Defendants Bank of America, N.A.)

59.  Plaintiffs repeat and reallege each of the allegations set forth in paragraphs above.

60.  Defendants Bank of America and U.S. Bank engaged in outrageous conduct directed at the Chins.  Defendants' conduct was so extreme that a reasonable person would find such conduct intolerable in a civilized society.

61.  Defendants Bank of America and U.S. Bank intended to cause the Chins emotional distress or acted with reckless disregard of the probability that the Chins would suffer emotional distress.

62.  The Chins have suffered severe emotional distress.  Defendants' conduct was a substantial factor in causing the Chins' severe emotional distress.

63.  Defendants Bank of America and U.S. Bank acted with malice, oppression, or fraud, and in conscious disregard of the right of others such that the Chins are entitled to punitive damages in an amount to be determined according to proof.

64.  WHEREFORE, Plaintiffs pray for relief as set forth below.

/ / /

---

**FIRST AMENDED COMPLAINT;** Case No. C 13-02704 EDL                    13

**FIFTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(Against Defendants Bank of America, N.A.)**

65.     Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

66.     At all relevant times herein mentioned, Defendants Bank of America and U.S. Bank, and each of them, were negligent, careless, and/or failed to exercise reasonable care with respect to their conduct, statements and/or actions toward Plaintiffs, and their conduct was a substantial factor in causing serious and severe emotional distress to Plaintiffs.

67.     WHEREFORE, Plaintiffs, and each of them, pray for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**REPORTING INACCURATE AND INCOMPLETE INFORMATION**

TO A CONSUMER **CREDIT REPORTING AGENCY**

**Consumer Credit Reporting Agencies Act**

**Cal. Civ. Code § 1785.25**

**(Against Defendant Bank of America, N.A.)**

68.     Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

69.     Defendant Bank of America furnished information on a specific transaction or experience that Defendant Bank of America knew, and had reason to know, was inaccurate and incomplete, including but not limited to reporting both the Deed in Lieu and overdue payments after the Deed in Lieu date.

70.     WHEREFORE, Plaintiffs, and each of them, pray for relief as hereinafter set forth.

/ / /

## SEVENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17200

### (Against Defendants Bank of America, Nationstar, and U.S. Bank)

71.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail.

72.    The wrongful conduct of Defendants Bank of America and U.S. Bank, described above, of inducing the Chin family to move on short notice by entering into a Deed in Lieu agreement, then reneging on that agreement and attempting to collect years' worth of interest when the Chins had already moved, constitutes unfair, unlawful, and/or fraudulent conduct in violation of § 17200 *et seq*. of the California Business and Professions Code.

73.    Defendant Bank of America's acts and practices as an agent of Defendant U.S. Bank were unlawful, unfair, and/or fraudulent business practices for the reasons set forth below, without limitation:

      a.    Defendant Bank of America's acts and practices as an agent of Defendant U.S. Bank constitute fraud and deceit, and violation of the covenant of good faith and fair dealing;

      b.    Defendant Bank of America's acts and practices as an agent of Defendant U.S. Bank were unfair in that they offend public policy as expressed in statutes and regulations, including but not limited to the Homeowner Bill of Rights and are unscrupulous;

      c.    Defendant Bank of America's acts and practices as an agent of Defendant U.S. Bank caused injury to Plaintiffs; and

      d.    Defendant Bank of America's acts and practices as an agent of Defendant U.S. Bank were unlawful, as set out in Causes of Action 1-6 above.

74.    Plaintiffs seek restitution from Defendants Bank of America and U.S. Bank, and each of them, as a result of their unfair, unlawful, and/or deceptive business acts or practices.

75.    Plaintiffs seek injunctive relief, including but not limited to an order requiring Defendants Bank of America, U.S. Bank, and Nationstar to reform or modify the loan to eliminate

1  charges to which Defendants Bank of America and U.S. Bank are not entitled, an order

2  restraining Defendants U.S. Bank and Nationstar from foreclosing on the Chins' home, and an

3  order requiring Defendants U.S. Bank and Nationstar to consider the Chins for a loan

4  modification according to industry standards on an appropriately modified loan balance.

5       76.    WHEREFORE, Plaintiffs pray for relief as set forth below.

6  **VII.   PRAYER FOR RELIEF**

7       77.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them,

8  as follows:

9            i.      For compensatory damages in an amount according to proof at trial;

10           ii.     For restitution, in an amount according to proof at trial;

11           iii.    For disgorgement, in an amount according to proof at trial;

12           iv.     For special and general damages in an amount according to proof;

13           v.      For exemplary and punitive damages according to proof;

14           vi.     For costs of suit herein incurred;

15           vii.    For pre- and post-judgment interest at the maximum legal rate;

16           viii.   For attorneys' fees;

17           ix.     For Orders temporarily, preliminarily, and permanently enjoining

18                   Defendants from selling or otherwise transferring title to the Home;

19           x.      For Orders temporarily, preliminarily, and permanently enjoining

20                   Defendants from taking any action to evict Plaintiffs from the Home; and

21           xi.     For such other and further relief as the Court may deem just and proper.

22

23  Dated:  December 9, 2013           **COTCHETT, PITRE &McCARTHY, LLP**

24                                      **HOUSING AND ECONOMIC RIGHTS ADVOCATES**

25                                      By: */s/ Elizabeth S. Letcher*_____

26                                          ELIZABETH S. LETCHER

27                                      *Attorneys for Plaintiffs*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiffs JOY CHIN and JACK CHIN hereby demand a jury trial on all issues so triable.

Dated:  December 9, 2013                    **COTCHETT, PITRE & McCARTHY, LLP**

                                            **HOUSING AND ECONOMIC RIGHTS
                                            ADVOCATES**

                                            By:  */s/ Elizabeth S. Letcher*_____
                                                  ELIZABETH S. LETCHER

                                            *Attorneys for Plaintiffs*

# Exhibit A

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California )
County of Alameda )

On 06 / 06 / 20 11 before me, Alexandro Camillo-Garcia _____, Notary Public,

personally appeared Jack H Chin & Joy woan-chin _____

_____ ,

who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

ALEXANDRO CARRILLO-GARCIA
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1913006
ALAMEDA COUNTY
My Comm. Exp. Nov. 12, 2014

Place Seal Above

━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━

## Description of Document

Document Title: _____

Document Date: _____   Number of Pages: _____

Signer(s) not named above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER

Signer is Representing: _____

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER

Signer is Representing: _____

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL
DEED AND TAX STATEMENT TO:

**U.S. Bank N.A., AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF BANC OF
AMERICA FUNDING CORPORATION
MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2007-D**

c/o Bank Of America Home Loans
400 National Way
CA6-919-01-09
Simi Valley, CA 93065



Space above this line for recorder's use only

## GRANT DEED IN LIEU OF FORECLOSURE

THE UNDERSIGNED GRANTOR(s) DECLARE(s):

1) The Grantee herein was the Beneficiary under the Deed of Trust dated **March 29, 2007** and executed by the undersigned Grantor(s) in favor of the Grantee herein:

2) The amount of the unpaid debt together with costs was:  **$689,489.98**

3) The amount paid by the Grantee over and above the unpaid debt was:  $_____

4) The documentary transfer tax is:  $_____

5) Said property is in: ( ) unincorporated area: (**X**) City of **San Ramon**, County of **Contra Costa**, State of **CA**; and

FOR VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, **JACK H. CHIN AND JOY WOON-CHIN, HUSBAND AND WIFE AS JOINT TENANTS** ("Grantor(s)") hereby grants to **U.S. Bank N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA FUNDING CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-D** ("Grantee"), the following described real property in the County of **Contra Costa** State of **CA**:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

**SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.**

**Said property is commonly known as 1820 Barossa Dr., San Ramon, CA 94583**

Date: _06/06/11_

By: **Jack H. Chin**

By: **Joy Woon-Chin**

STATE OF _California_

COUNTY OF _Alameda_

On _6 Jun 2011_ before me, _Alexandro Carrillo-Garcia_, a notary public, personally appeared _Jack H. Chin_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

ALEXANDRO CARRILLO-GARCIA
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1913006
ALAMEDA COUNTY
My Comm. Exp. Nov. 12, 2014

STATE OF _California_

COUNTY OF _Alameda_

On _6 Jun 2011_ before me, _Alexandro Carrillo-Garcia_, a notary public, personally appeared _Joy Woon-Chin_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

ALEXANDRO CARRILLO-GARCIA
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1913006
ALAMEDA COUNTY
My Comm. Exp. Nov. 12, 2014

## EXHIBIT "A"

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF CONTRA

COSTA, CITY OF SAN RAMON AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

LOT 353, AS SHOWN ON THE MAP OF SUBDIVISION 8152, FILED MARCH 1, 2002, IN MAP BOOK 440, AT PAGE

1-13, CONTRA COSTA COUNTY RECORDS.

EXCEPTING THEREFROM:

THE RIGHTS RESERVED IN THE DEED FROM EMIL GUMPERT, ET AL, TO EDCEL, N V, A

NETHERLANDS ANTILLES CORPORATION, RECORDED MARCH 28, 1980, AS INSTRUMENT NO. 80-39830,
AS

FOLLOWS:

"BUT ONLY AS TO THE AREA LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE LAND SURFACE
OF THE REAL PROPERTY, AN UNDIVIDED ONE-HALF (1/2) INTEREST IN AND TO ALL RIGHTS TO, AND
ONE-HALF (1/2) OF ALL OIL, GAS, MINERALS, PETROCHEMICALS AND OTHER HYDROCARBON
SUBSTANCES, IN, UNDER OR PRODUCED AND SAVED FROM, THE REAL PROPERTY.

EXCEPTING THEREFROM, THE RIGHTS RESERVED IN THE DEED FROM EMIL GUMPERT, ET AL. TO
EDCEL,

N.V., A NETHERLANDS ANTILLES CORPORATION, RECORDED ON MARCH 28, 1980, AS INSTRUMENT NO.
80-39830, AS FOLLOWS: "BUT ONLY AS TO THE AREA LYING MORE THAN FIVE HUNDRED (500) FEET
BELOW THE LAND SURFACE OF THE REAL PROPERTY, AN UNDIVIDED ONE-HALF (1/2) INTEREST IN AND
TO ALL RIGHTS TO, AND ONE-HALF (1/2) OF ALL OIL, GAS, MINERALS, PETROCHEMICALS AND OTHER
HYDROCARBON SUBSTANCES IN, UNDER OR PRODUCED AND SAVED FROM, THE REAL PROPERTY."
RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST, ASSIGNS
AND

OTHERS, EASEMENTS FOR ACCESS, INGRESS, EGRESS, ENCROACHMENT, SUPPORT, MAINTENANCE,
DRAINAGE, REPAIR, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP, AND AS
DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND
RESERVATION

OF EASEMENTS FOR WINDEMERE (TOGETHER WITH ANY AMENDMENTS, THE

"DECLARATION"), RECORDED ON NOVEMBER 27, 2001, AS INSTRUMENT NO. 2001-361540, IN OFFICIAL
RECORDS OF CONTRA COSTA COUNTY, CALIFORNIA (THE "OFFICIAL RECORDS").

ALSO RESERVING THEREFROM, THE RIGHT TO ENTER THE LOT (1) TO COMPLETE AND REPAIR ANY
IMPROVEMENTS OR LANDSCAPING LOCATED THEREON AS DETERMINED NECESSARY BY GRANTOR,
IN

ITS SOLE DISCRETION, (2) TO COMPLY WITH REQUIREMENTS FOR THE RECORDATION OF THE MAP OR
THE GRADING OR CONSTRUCTION OF THE PROPERTIES, AS DEFINED IN THE DECLARATION, OR (3) TO
COMPLY WITH REQUIREMENTS OF APPLICABLE GOVERNMENTAL AGENCIES. GRANTOR SHALL
PROVIDE

REASONABLE NOTICE TO GRANTEE BEFORE SUCH ENTRY. IF THIS RESERVATION OF RIGHT OF ENTRY
IS

NOT COMPLIED WITH BY GRANTEE, GRANTOR MAY ENFORCE THIS RIGHT OF ENTRY IN A COURT OF
LAW. GRANTEE SHALL BE RESPONSIBLE FOR ALL DAMAGES ARISING OUT OF SUCH FAILURE TO
COMPLY, INCLUDING ATTORNEYS' FEES AND COURT COSTS, THE TERM OF THIS RESERVATION OF
RIGHT

OF ENTRY SHALL AUTOMATICALLY EXPIRE TWELVE (12) MONTHS FROM THE DATE THIS GRANT DEED
IS

RECORDED.

ALSO RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS AND ASSIGNS,
TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, THE RIGHT

TO
PLACE ON, UNDER OR ACROSS THE LOT, TELECOMMUNICATIONS FACILITIES FOR THE PROVISION OF
TELECOMMUNICATIONS SERVICES TO THE PROPERTIES, AND THEREAFTER TO OWN AND CONVEY
SUCH TELECOMMUNICATIONS FACILITIES, AND THE RIGHT TO ENTER UPON THE PROPERTIES TO
SERVICE, MAINTAIN, OPERATE, REPAIR, RECONSTRUCT AND REPLACE THE TELECOMMUNICATIONS
FACILITIES; PROVIDED, HOWEVER, THAT THE EXERCISE OF SUCH RIGHTS SHALL NOT
UNREASONABLY INTERFERE WITH GRANTEE'S REASONABLE USE AND ENJOYMENT OF THE LOT. THE
CAPITALIZED TERMS IN THIS RESERVATION ARE DEFINED IN THE DECLARATION.
PARCEL TWO: NONEXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT,
MAINTENANCE, REPAIR, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP, AND AS
DESCRIBED IN THE DECLARATION

## EXHIBIT "B"

### ESTOPPEL AFFIDAVIT

THAT THE AFORESAID DEED IS INTENDED TO BE AND IS AN ABSOLUTE CONVEYANCE OF THE TITLE TO SAID PREMISES TO THE GRANTEE NAMED THEREIN AND WAS NOT AND IS NOT NOW INTENDED AS A MORTGAGE, TRUST CONVEYANCE OR SECURITY OF ANY KIND; THAT IT WAS THE INTENTION OF THE AFFIANT(S) AS GRANTOR(S) IN SAID DEED OF CONVEYANCE, AND BY SAID DEED THESE AFFIANT(S) DID CONVEY TO THE GRANTEE THEREIN ALL THEIR RIGHT, TITLE, AND INTEREST ABSOLUTELY IN AND TO SAID PREMISES; **THAT POSSESSION OF SAID PREMISES HAS BEEN SURRENDERED TO THE GRANTEE.**

THAT IN EXECUTION AND DELIVERY OF SAID DEED, AFFIANT(S) WAS/WERE NOT ACTING UNDER ANY MISAPPREHENSION AS TO THE EFFECT THEREOF, AND ACTED FREELY AND VOLUNTARILY AND WERE NOT ACTING UNER COERCION OR DURESS;

THAT THE CONSIDERATION FOR SAID DEED WAS AND IS PAYMENT TO AFFIANT(S) THE SUM OF **$0.00**, BY GRANTEE AND THE FULL CANCELLATION OF ALL DEBTS, OBLIGATIONS, COSTS AND CHARGES SECURED BY THAT CERTAIN DEED OF TRUST HERETOFORE EXISTING ON SAID PROPERTY EXECUTED BY, **Jack H. Chin, Joy Woon-Chin** AS TRUSTOR(S), TO **PRLAP, INC.**, AS TRUSTEE FOR **BANK OF AMERICA N.A** AS THE BENEFICIARY AND RECORDED ON **April 4, 2007**, AS INSTRUMENT NO. **2007-0098013-00** OF OFFICIAL RECORDS IN THE OFFICE OF THE RECORDER OF **Contra Costa** COUNTY, STATE OF **CA** AND THE BENEFICIAL INTEREST UNDER SAID DEED OF TRUST HAVING BEEN ASSIGNED TO **U.S. Bank N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA FUNDING CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-D**, THE GRANTEE HEREIN AND THE RECONVEYANCE OF SAID PROPERTY UNDER SAID DEED OF TRUST;

THAT AT THE TIME OF MAKING SAID DEED AFFIANT(S) BELIEVED AND NOW BELIEVE(S) THAT THE AFORESAID CONSIDERATION THEREFORE REPRESENTS THE FAIR VALUE OF THE PROPERTY SO DEEDED;

THIS AFFIDAVIT IS MADE FOR THE PROTECTION AND BENEFIT OF THE GRANTEE IN SAID DEED, HIS SUCCESSORS AND ASSIGNS, AND ALL OTHER PARTIES HEREAFTER DEALING WITH OR WHO MAY ACQUIRE AN INTEREST IN THE PROPERTY HEREIN DESCRIBED, AND PARTICULARLY FOR THE BENEFIT OF ANY TITLE COMPANY WHICH WILL INSURE THE TITLE TO SAID PROPERTY IN RELIANCE THEREON AND ANY OTHER TITLE COMPANY WHICH MAY HEREAFTER INSURE THE TITLE TO SAID PROPERTY;

THAT AFFIANT(S), AND EACH OF THEM WILL TESTIFY, DECLARE, DEPOSE, OR CERTIFY BEFORE ANY COMPETENT TRIBUNAL, OFFICER OR PERSON IN ANY CASE NOW PENDING OR WHICH MAY HEREAFTER BE INSTITUTED, TO THE TRUTH OF THE PARTICULAR FACTS HEREINABOVE SET FORTH.

Date: _06/06/11_

By: **Jack H. Chin**

By: **Joy Woon-Chin**

STATE OF _California_

COUNTY OF _Alameda_

On _6 Jun 2011_ before me, _Alexandro Carrillo-Garcia_, a notary public, personally appeared _Jack H. Chin_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

ALEXANDRO CARRILLO-GARCIA
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1913006
ALAMEDA COUNTY
My Comm. Exp. Nov. 12, 2014

STATE OF _California_

COUNTY OF _Alameda_

On _6 Jun 2011_ before me, _Alexandro Carrillo-Garcia_, a notary public, personally appeared who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

ALEXANDRO CARRILLO-GARCIA
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1913006
ALAMEDA COUNTY
My Comm. Exp. Nov. 12, 2014

**ASSIGNMENT OF UNEARNED PREMIUM REFUND**

A Deed in Lieu of Foreclosure was completed on the property: The transaction closed on 1820 Barossa Dr, San Ramon, CA 94583                                                    06/13/2011.

I/We, the insured, hereby request cancellation of our hazard insurance (e.g. homeowners, flood, hail, windstorm, etc.) effective on the closing date. Please refund the unearned portion of the premium directly to:

BAC Home Loans Servicing, LP
**Mail Stop CA6-915-01-03**
**30870 Russell Ranch Rd.**
**Westlake Village, CA 91362**
**ATTENTION: Deed in Lieu Customer Contact Department**
REFERENCE Account No: 872325440

I/We, the insured, hereby relinquish any claim to these funds.

_____          06/06/11
Jack H Chin Signature                     Date Signed

_____          06 / 06 / 11
Joy Woon-Chin Signature                   Date Signed

---

**Important Notice to Seller Regarding Income Tax Reporting**

In order to provide you with the total interest you paid on your mortgage and/or reported to the IRS at year-end, BAC Home Loans Servicing, LP will need your new mailing address. Please complete the information below.

872325440
Jack H Chin & Joy Woon-Chin            WE WILL NOTIFY YOU LATE

**Current Mailing Address:**           THIS WEEK OF OUR
1820 Barossa Dr                        NEW ADDRESS. WE ARE
San Ramon, CA 94582                    STILL SEEKING.

**New Mailing Address:**          N/A
Street: _____

City: _____        State: _____  Zip: _____

Telephone: (_____)      (JOY'S CELLULAR)
                                  (JACK'S CELLULAR)

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

DIL Approval-No def 12509 09/08/2010

PDF processed with CutePDF evaluation edition www.CutePDF.com

# Move Out Agreement



This **Move Out Agreement** ("Agreement") is entered into as of 06/13/2011, by and between BAC Home Loans Servicing, LP and all other occupants of the Property, as defined below, ("Occupant").

BAC Home Loans Servicing, LP will acquire through an executed Deed in Lieu of Foreclosure all of that real property with improvements therein commonly described as 1820 Barossa Dr in the City of San Ramon, CA, County of CONTRA COSTA ("Property").

BAC Home Loans Servicing, LP is entitled to initiate eviction proceedings against the Occupant to remove the Occupant from the Property, and such proceedings will commence one day after the agreed upon Move Out Date.

BAC Home Loans Servicing, LP and the Occupant have agreed that the Occupant will vacate the Property on the terms and conditions contained herein.

NOW, THEREFORE, the parties agree as follows:

1. **Move Out Date:** The Occupant has agreed to vacate the Property on or before **06/13/2011** (the "Move Out Date").

2. **Condition of Property:** During the time the Occupant continues to occupy the Property, the Occupant shall keep the Property in good and safe condition, reasonable wear and tear excepted. BAC Home Loans Servicing, LP shall have no obligation to make any repairs to the Property. All fixtures, including but not limited to, built-in appliances, shall remain at the Property after the Occupant vacates the Property. Upon move out, the Property shall be left broom clean by the Occupant.

3. **Access to Property:** Occupant shall allow BAC Home Loans Servicing, LP and any of its employees or agents access to the Property to determine the value of the Property. The Occupant shall not unreasonably deny BAC Home Loans Servicing, LP and any of its employees or agents access to the Property.

4. **Representations and Warranties:** The Occupant represents and warrants that they are the only person(s) occupying the Property.

5. **Costs and Expenses:** If either party to this Agreement commences an action or proceeding to enforce its rights under this Agreement or construe any provision of this Agreement, the non-prevailing party in such action or proceeding shall pay all costs and expenses incurred by the prevailing party (who shall be the party who obtains substantially the relief sought by such party, whether by settlement, compromise or judgment), including, without limitation, all court costs and all reasonable attorneys' fees.

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

DIL Approval-No def 12509 09/08/2010

PDF processed with CutePDF evaluation edition www.CutePDF.com

6. **Eviction Proceedings:** Notwithstanding any of the foregoing, BAC Home Loans Servicing, LP may, at its discretion, initiate, continue, postpone, maintain or hold in abatement, any eviction proceeding against the Occupant to remove the Occupant and his or her personal property from the Property. However, the Occupant will not be locked out or removed from the Property prior to the earlier of (i) Move Out Date; or (ii) a breach of this Agreement by the Occupant. Activity performed in connection with a lawful eviction proceeding, including, but not limited to, service of process or attendance at any eviction proceeding, is not a breach of this Agreement.

7. **Personal Property:** The Occupant hereby acknowledges and agrees that as of the Move Out Date, a) the Occupant relinquishes any and all rights, title, and interests in any personal property remaining at the Property, b) such personal property is not wanted by the Occupant and shall be considered abandoned, and c) BAC Home Loans Servicing, LP may in its complete and sole discretion keep, remove or dispose of such personal property.

8. **Voluntary Agreement; No Other Inducements:** The Occupant agrees that the Occupant has: a) freely and voluntarily signed and agreed to this Agreement; b) not been given and not relied on any inducements or promises other than those contained herein; c) had the opportunity to confer with independent counsel before signing this Agreement; d) read, knows and completely understands the terms of this Agreement; and e) full competence under the Laws to sign and agree to the terms of this Agreement.

9. **Entire Agreement; Governing Law:** This Agreement contains the entire agreement of the parties hereto with regard to the subject matter herein. This Agreement shall be interpreted, enforced and governed by the Laws where the Property is located.

10. **Amendments; Waivers:** This Agreement may only be modified by a written instrument signed by the Occupant and an officer of BAC Home Loans Servicing, LP. The granting of a waiver by BAC Home Loans Servicing, LP of any breach of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach. Any delay on the part of BAC Home Loans Servicing, LP in exercising any right or remedy under this Agreement shall not operate as a waiver of any such right or remedy. No course of dealing between the parties shall operate as a waiver of any provision of this Agreement.

11. **Counterparts; and Facsimile Signatures:** This Agreement may be executed in counterparts, and by facsimile signature. A signed facsimile or photocopy of this Agreement shall be treated as an original and shall be deemed to be as binding, valid, genuine and authentic as an originally signed agreement for all purposes, including all matters of evidence and the "best evidence" rule.

12. **Survival:** Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable Laws, but if any provision of this Agreement shall be held to be invalid or prohibited by applicable Laws, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

DIL Approval-No def  12509  09/08/2010

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**OCCUPANT:**

JACK H. CHIN
PRINT Name of Occupant #1

SIGNATURE of Occupant #1

Joy Woon -Chin
PRINT Name Occupant #2

SIGNATURE of Occupant #2

**BAC Home Loans Servicing, LP:**

_____
PRINT Name

_____
SIGNATURE

_____
Title

Occupant Initials _____ / _____

## Personal Property Release

I, Jack H Chin & Joy Woon Chin, am the former Occupant at real property commonly described as 1820 Barossa Dr in the City of San Ramon, CA, County of CONTRA COSTA, ("Property").

I hereby relinquish any and all interest in the personal belongings left at this property and understand that said personal belongings are now considered abandoned. I am aware that any personal property left after midnight on 06/13/2011 will be disposed of at BAC Home Loans Servicing, LP's discretion.

Signed date signed:  06/06/11

JACK H. CHIN
PRINT Name of Occupant #1

SIGNATURE of Occupant #1

Joy Woon -chin
PRINT Name of Occupant #2

SIGNATURE of Occupant #2

## SURRENDER OF POSSESIONS AGREEMENT

This Agreement is made this __6 TH__ day of __JUNE__ 20 11 between BAC Home Loans Servicing, LP and Jack H Chin & Joy Woon-Chin residing in BAC Home Loans Servicing, LP's property at 1820 Barossa Dr in the city and state of San Ramon, CA (Property).

BAC Home Loans Servicing, LP will pay to Jack H Chin & Joy Woon-Chin (Borrower) a total of $0.00, representing the incentive payment, provided the Borrower has met the following Terms and Conditions of the Agreement.

Borrower agrees to vacate the Property no later than 06/13/2011 (Vacancy Date) and provide BAC Home Loans Servicing, LP at least 24 hours notice.

Immediately upon move out, Borrower agrees to deliver all the keys and controls, such as garage door openers, to the designated real estate agent or servicer representative, NA, telephone number 302-432-5081. Alternatively, you may mail the keys and controls to:

BAC Home Loans Servicing, LP
ATTENTION: Patricia Pritchett
**Mail Stop CA6-915-01-03**
**30870 Russell Ranch Rd.**
**Westlake Village, CA 91362**
**ATTENTION: Deed in Lieu Customer Contact Department**
REFERENCE Account No: 872325440

Borrower agrees to leave the Property in "broom clean" condition when vacating the premises, including the removal of all trash and debris, and the Property is left in the same condition as it was on the date of this Agreement, ordinary wear and tear excepted. In the event there is damage caused by Borrower between the date of this Agreement and the date Borrower vacates the Property, or if Borrower leaves trash and debris, the cost of repairing or replacing any fixtures or property removed from the Property, or the removal of trash and debris **will be deducted** from the agreed incentive payment amount.

Borrower shall hold BAC Home Loans Servicing, LP, its representatives, servicers, agents, successors and assigns harmless from any and all liability, loss, cost or expense, including reasonable attorney's fees, arising out of and/or in connection with the Property.

During the term of this Agreement, Borrower shall bear full responsibility for all personal property kept at the Property and shall further bear all risk of any loss or damage caused to such personal property, regardless of cost.

On or before the Vacancy Date, Borrower shall have removed all personal property from the Property, and any items remaining after the Vacancy Date shall become the property of BAC Home Loans Servicing, LP.

Throughout the period Borrower occupies the Property, Borrower shall, at his/her own expense, maintain and care for the Property, keep the lawn and other plantings trimmed, keep the Property free of debris, and use the Property in accordance with all applicable governmental codes and regulations, and shall, at personal expense, pay for all utility service at the Property.

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

DIL Approval-No def 12509 09/08/2010

PDF processed with CutePDF evaluation edition www.CutePDF.com

Borrower shall hold BAC Home Loans Servicing, LP, its representatives, servicers, agents, successors and assigns, Directors, Officers, employees and contractors harmless from any and all liability, loss, cost or expense, including reasonable attorney's fees arising out of and/or in connection with Borrower's use of the Property, and further, shall defend BAC Home Loans Servicing, LP in any such action in which it is named a Defendant which relates to the Property.

**Borrower Acknowledgement of Risks, Conditions and Contingencies.** In signing and returning the Surrender of Possessions Agreement, I/we agree to all the stated terms and conditions.

872325440

| | | | |
|---|---|---|---|
| Jack H Chin Signature | 06/06/11<br>Date | Joy Woon-Chin Signature | 6/6/11<br>Date |
| JACK H. CHIN<br>Jack H Chin Printed Name | | Joy Woon-Chin Printed Name<br>JOY Woon- Chin | |

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

DIL Approval-No def 12509 09/08/2010